A96A0694. THE STATE v. PASTORINI.
(474 SE2d 122)

POPE, Presiding Judge.

The State appeals from the trial court's ruling finding inadmissible the field sobriety tests administered to Pastorini. We affirm in part and reverse in part.

The record in this case demonstrates that on January 28, 1995, shortly after 10:00 p.m., Gwinnett County Officer Griffith was dispatched to investigate a minor traffic accident on Peachtree Parkway. He found a Lexus and a Mitsubishi pulled to the side of the road, with the drivers waiting outside their vehicles. The Lexus was slightly damaged on the front of the passenger's side and Pastorini's Mitsubishi was dented on the front driver's side. Officer Griffith observed that Pastorini's face was flushed, his eyes red, bloodshot, and glazed, he was unsteady on his feet, and he "smelled strongly of alcoholic beverage." Pastorini had his driver's license in his hand, but had left his insurance card in his vehicle. When asked for it by the officer, he started toward his car. He was unsteady on his feet and had to use the car to steady himself. The officer obtained the licenses and insurance cards of both drivers and retained them.

Officer Griffith asked Pastorini how much he had had to drink and Pastorini said "three scotches." Asked if he thought he should be driving, Pastorini replied, "no, I should be at home." Asked what had happened in the accident, Pastorini replied he did not know.

1. The trial court concluded that, after this exchange, if not sooner, Pastorini was not free to leave the scene, i.e., was in custody, and that the field sobriety tests administered thereafter were inadmissible due to lack of *Miranda* warnings. We disagree. In *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), the United States Supreme Court held that a person taken into official police custody or otherwise deprived by police of their freedom of action in any significant way must be advised of their constitutional rights. In its decision, however, the Supreme Court failed to set forth what was meant by "in custody." But, it later addressed this issue in *Berkemer v. McCarty*, 468 U. S. 420 (104 SC 3138, 82 LE2d 317) (1984).

In that case, the Supreme Court formulated an objective test to determine whether a detainee is "in custody." That test is whether a reasonable person in the detainee's position would have thought the detention would not be temporary. Id. at 442. The Supreme Court also held that the safeguards prescribed by *Miranda* become applicable only after a detainee's "freedom of action is curtailed to a 'degree associated with formal arrest.' [Cit.]" Id. at 440. The rationale behind the holding is that although an ordinary traffic stop curtails the freedom of action of the detained motorist and imposes some pressures on the detainee to answer questions, such pressures do not sufficiently impair the detainee's exercise of his privilege against self-incrimination so as to require that he be advised of his constitutional rights.

In applying the above-mentioned test and rationale, we have specifically held that roadside questioning during the investigation of a routine traffic incident generally does not constitute a custodial situation. *Crum v. State*, 194 Ga. App. 271, 272 (390 SE2d 295) (1990). "A law enforcement officer coming upon the scene of suspected criminal activity [or a traffic incident] will conduct a general on-the-scene investigation and may detain temporarily anyone at the scene who tries to leave. . . ." *Lankford v. State*, 204 Ga. App. 405, 406-407 (2) (419 SE2d 498) (1992). Moreover, "[a]n officer conducting a routine traffic stop may request and examine a driver's license and vehicle registration and run a computer check on these documents. [Cits.]" *Rogers v. State*, 206 Ga. App. 654, 657 (2) (426 SE2d 209) (1992). The fact that an officer retains a detainee's license for a short period during the course of an investigation does not necessarily mean that the detainee is in custody, even if at that point, by leaving, the detainee could be arrested for violating State law. See *Crum*, 194 Ga. App. at

272, where we found a driver who could not show proof of insurance during a routine traffic stop, and thus could have been arrested if he attempted to leave, was not "in custody" until after he had been given field sobriety tests and formally arrested.

In cases like this, it is " 'crucial to focus on what the [detainee's] immediate "business" is, in order to decide if the police retention of his papers would likely impede his freedom to proceed with it,' [cit.]." *Rogers*, 206 Ga. App. at 658 (2), and thus, reach a determination as to whether or not a reasonable person in the detainee's position would believe that the detention was temporary. Defendant's immediate business in this case revolved around the fact that he had been involved in a car accident. And, unlike the factual situation presented in *Rogers*, upon arriving on the scene, the police officer in this case only posed questions to defendant that were relevant to the reason he had taken defendant's license in the first place — to conduct an investigation of the accident. Under such circumstances, we hold that at the time defendant was given the field sobriety tests, a reasonable person in his position would not have concluded that his freedom of action had been more than temporarily curtailed, but rather, that he was only "being briefly detained while the officer determined the nature of the situation." *Daugherty v. State*, 182 Ga. App. 730, 731 (356 SE2d 902) (1987); *Lankford*, 204 Ga. App. at 407. " ' "Treatment of this sort cannot fairly be characterized as the functional equivalent of formal arrest." (Cits.)' *Lipscomb v. State*, 188 Ga. App. 322 (372 SE2d 853) (1988). Since [defendant] was not formally arrested until after the field sobriety test[s], there was no violation of his right against self-incrimination." Id.

The dissent's reliance on *Hughes v. State*, 259 Ga. 227, 228 (1) (378 SE2d 853) (1989) and *State v. Whitfield*, 214 Ga. App. 574 (3) (448 SE2d 492) (1994) in support of its conclusion that the trial court did not clearly err in this case is misplaced. Both of those cases are distinguishable from the case at bar. In *Hughes*, the arresting officer had told the suspect that he was not free to leave before giving the suspect sobriety tests and allowing him to make certain statements. In *Whitfield*, the suspect had been formally arrested on obstruction charges and then transported to the police station where he was given sobriety tests before being read his *Miranda* rights.

2. The sobriety tests at issue in this case are the "walk and turn," "one leg stand" and "horizontal gaze nystagmus." In addition to the reason stated in Division 1 of this opinion, the trial court suppressed evidence of each of the tests on the ground that they had not been administered in accordance with NHTSA standards. By doing so, the trial court in essence treated each test as a scientific procedure. We have previously determined, however, that sobriety tests such as the "walk and turn" and the "one leg stand," both of which demonstrate a

suspect's dexterity and ability to follow directions, do not constitute scientific procedures. See *Crawford v. City of Forest Park*, 215 Ga. App. 234, 236 (450 SE2d 237) (1994). And, testimony from an officer about a suspect's inability to complete such dexterity tests does not amount to testimony regarding scientific procedures, but instead amounts to testimony as to behavioral observations on the officer's part. Id. Therefore, these two tests and any testimony concerning their administration are not subject to the standard set out in *Harper v. State*, 249 Ga. 519, 525 (292 SE2d 389) (1982), for determining whether a scientific procedure is admissible.

While it is true that the police officer in this case had been trained to administer the above-mentioned dexterity tests by the NHTSA, and defendant introduced expert testimony indicating that the officer had failed to administer the tests in accordance with his training, such expert testimony affects only the weight to be given to the tests, and not their admissibility. The weight and credibility of evidence such as this should be left for jury determination. *Coates v. State*, 216 Ga. App. 93 (453 SE2d 35) (1995). Accordingly, we conclude that the trial court's decision to suppress evidence concerning the "one leg stand" and "walk and turn" tests based on the officer's administration of these tests was clearly erroneous.

The trial court's decision to suppress evidence of the "horizontal gaze nystagmus test," on the other hand, was not clearly erroneous. That test constitutes a scientific procedure, see *Manley v. State*, 206 Ga. App. 281 (424 SE2d 818) (1992), and there was ample evidence from which the trial court could have determined that the test's administration was invalid. Consequently, we affirm the trial court's decision to exclude evidence regarding that test.

*Judgment affirmed in part and reversed in part. Beasley, C. J., Johnson, Blackburn and Ruffin, JJ., concur. Birdsong, P. J., Andrews and Smith, JJ., concur in part and dissent in part. McMurray, P. J., dissents.*

ANDREWS, Judge, concurring in part and dissenting in part.

Although I concur with Division 2, because I believe that the trial judge did not, under the facts of this case, make clearly erroneous factual or legal conclusions concerning whether Pastorini was "in custody," I must respectfully dissent as to Division 1.

Pastorini filed a motion in limine to exclude evidence of the field sobriety tests administered to him. The same appellate rules apply to our review of both a motion in limine and a motion to suppress. *State v. Leviner*, 213 Ga. App. 99 (1) (443 SE2d 688) (1994), quoting *Baldwin v. State*, 263 Ga. 524, 525 (1) (435 SE2d 926) (1993). Therefore, the factual and credibility determinations made by the trial judge in granting a motion in limine must be accepted by this Court unless

clearly erroneous. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994); *Leviner*, supra; *Rogers v. State*, 206 Ga. App. 654 (426 SE2d 209) (1992).

As in *Rogers v. State*, supra at 657 (2), when Officer Griffith took Pastorini's license and registration, due to his location on the shoulder of Peachtree Parkway, a six lane limited access highway, at its intersection with Holcomb Bridge Road, Pastorini was "effectively immobilized without his driver's license since had he tried to drive away he could have been arrested for driving without a license. OCGA §§ 40-5-20; 40-5-29. [Cits.]" Id. at 658.

Also, Officer Griffith's investigation, at this point, had broadened from consideration of which, if either, driver to cite for a moving traffic violation as a result of the auto accident into one involving a noticeably intoxicated driver who would not be allowed to leave the scene under his own power. Compare *Carroll v. State*, 203 Ga. App. 22 (416 SE2d 354) (1992), with *Hughes v. State*, 259 Ga. 227, 228 (1) (378 SE2d 853) (1989). As stated in dissent by Judge Deen in *State v. Hughes*, 189 Ga. App. 671, 676 (377 SE2d 192) (1988), modified by *Hughes*, supra, "[i]f something looks like an arrest, sounds like an arrest, and acts like an arrest, it probably is an arrest, regardless of whether or not one uses the magic word itself."

I would affirm the trial court's grant of Pastorini's motion regarding exclusion of the field sobriety tests on the basis he was in custody. *State v. Whitfield*, 214 Ga. App. 574 (3) (448 SE2d 492) (1994); see *Weeks v. State*, 206 Ga. App. 431, 433 (425 SE2d 421) (1992).

I am authorized to state that Presiding Judge Birdsong and Judge Smith join in this opinion.

DECIDED JULY 12, 1996 —

*Gerald N. Blaney, Jr., Solicitor, Richard E. Thomas, Allison L. Thatcher, Assistant Solicitors*, for appellant.

*William C. Head*, for appellee.

