A98A1629. HELLER v. THE STATE.
(507 SE2d 518)

SMITH, Judge.

James Heller was charged by accusation in Cobb County with DUI, speeding, and failure to maintain lane. A jury found him guilty on all counts. He appeals from the judgment of conviction and sentence entered thereon. We find no error, and we affirm.

1. Heller first contends that the implied consent warnings, given to him as directed by OCGA § 40-5-67.1 (b) (2), were misleading and coercive in that they failed to inform him of the privilege against self-incrimination granted by Art. I, Sec. I, Par. XVI of the Georgia Constitution of 1983 and OCGA § 24-9-20. This is patently without merit. The Supreme Court of Georgia has held that this privilege is not violated either by the admission into evidence of the results of the State-administered blood test following the reading of implied consent warnings, *Fantasia v. State*, 268 Ga. 512, 513-514 (2) (491 SE2d 318) (1997), or by the admission of evidence showing that the defendant refused to take such a test after the implied consent warnings were administered. *Keenan v. State*, 263 Ga. 569, 571-572 (2) (436 SE2d 475) (1993). It follows, therefore, that the warnings themselves need not inform of such a privilege.

2. Heller next complains of the admission of the arresting officer's testimony regarding Heller's "sway," as compared to that of a normal, sober person. He appears to argue that the officer's testimony was inadmissible, either because an insufficient foundation was laid to show that the officer was qualified to testify as to the sway of a "normal" person, or because the officer's testimony referred to field sobriety tests, which constitute nonscientific evidence in violation of *State v. Pastorini*, 222 Ga. App. 316 (474 SE2d 122) (1996). Under either argument, Heller is incorrect.

(a) Heller is correct that the arresting officer, Michael Bowman of the Cobb County Police Department, had no "medical training" that would lay a foundation for his testimony that Heller's "sway was more defined than the give or take of two inches that a normal person has." Bowman was not qualified as an expert. But even expert testimony may be based upon foundation other than "medical training"; it may be based upon observation, experience, and training. *Bacon v. State*, 225 Ga. App. 326, 329 (483 SE2d 894) (1997). Bowman certainly had such experience and training. He testified that he was assigned to the Cobb County DUI Task Force when he stopped Heller. He had attended five different training sessions on investigating DUI cases, totaling 112 hours. He was a member of the task force for three and one-half years and made several hundred DUI stops. In addition, he attended several training programs comprising many hours on DUI field sobriety testing, including a 40-hour course designed to teach instructors how to teach officers to do field sobriety testing. This provided more than sufficient foundation for Bowman's testimony.

(b) *Pastorini*, supra, actually *supports* the admission of the officer's testimony. In *Harper v. State*, 249 Ga. 519 (292 SE2d 389) (1982), the Supreme Court set forth the test for determining "whether a given scientific principle or technique is a phenomenon

that may be verified with such certainty that it is competent evidence in a court of law." Id. at 524. Although nonscientific evidence should not be presented to the jury in the guise of science, in *Pastorini*, supra, this Court held that "sobriety tests such as the 'walk and turn' and the 'one leg stand,' both of which demonstrate a suspect's dexterity and ability to follow directions, do not constitute scientific procedures. [Cit.] And, testimony from an officer about a suspect's inability to complete such dexterity tests does not amount to testimony regarding scientific procedures, but instead amounts to testimony as to behavioral observations on the officer's part. [Cit.] Therefore, these two tests and any testimony concerning their administration are not subject to the standard set out in *Harper*[, supra]." *Pastorini*, supra at 318-319 (2). We find no error.

3. Heller contends that Bowman's testimony regarding the results of the alco-sensor test violated *Turrentine v. State*, 176 Ga. App. 145 (335 SE2d 630) (1985).

*Turrentine* teaches that the alco-sensor "is used as an initial screening device to aid the police officer in determining probable cause to arrest a motorist suspected of" DUI. Id. at 146. It is not used to determine the *amount* of alcohol in a person's blood, id., and it is impermissible to testify to the results of an alco-sensor test giving a numeric reading as to the amount of alcohol in the person's blood. But Bowman did not testify to a numeric reading on the alco-sensor test. He clearly identified the test as an initial screening measure that gives a positive/negative result. He testified that two alco-sensor tests were given. Between the first and second alco-sensor tests, Bowman had Heller perform the field sobriety tests.

After describing the field sobriety evaluations, Bowman testified that a second alco-sensor test was done, "trying to give the driver every benefit of the doubt." He testified that "[t]he results on the alcosensor were positive, which indicated possible impairment to the extent that he was a less than safe —." At that point, Heller objected and requested a mistrial, interrupting Bowman's testimony. The trial court disagreed with Heller's statement that Bowman had testified impermissibly and stated, "I heard him say that he had a positive alcosensor result, which again indicated to him that the driver might possibly be impaired. I see nothing wrong with that testimony."

We agree with the trial court. The jury was never told that the alco-sensor measured the amount of alcohol in Heller's blood, or even that a numeric reading could be obtained from an alco-sensor. Bowman's testimony did not violate *Turrentine*.

4. Heller characterizes certain statements in the State's closing argument as improper "golden rule" arguments. "In a classic 'golden rule' argument, jurors are invited to place themselves in the victim's place in regard to the crime itself. [Cit.] However, any argument,

regardless of nomenclature, which importunes the jury to place itself in the position of the victim for any purpose must be carefully scrutinized to ensure that no infringement of the accused's fair trial rights has occurred." *Horne v. State*, 192 Ga. App. 528, 529 (2) (385 SE2d 704) (1989).

In this case, in closing argument the prosecutor stated, before being interrupted by Heller's objection: "I'm going to ask you this question. If you were out late working, if you were out late with family —." The trial court cautioned the State to rephrase its argument, and the State continued: "Seeing what you see here now, do you think he was less safe? Do you want to expose the people of Cobb County to the risk that he presented . . . southbound on US 41?" This time, Heller's objection was overruled.

This is not a "golden rule" argument. This Court has held that asking jurors to put themselves as passengers in the car the accused was driving while he was impaired was not impermissible because "[t]here had been no passengers in fact." *Gray v. State*, 222 Ga. App. 626, 633 (5) (476 SE2d 12) (1996). The same reasoning applies here. It is arguable that the trial court need not have limited the first line of argument; the jurors were not *actually* out driving on the night Heller was stopped. And the second line of argument is clearly permissible. The State did not ask the jurors to view the facts from any perspective except their own. They were asked to judge Heller by what they had seen and heard at trial. The mere fact that they were all citizens of Cobb County does not, as Heller contends, make this a "golden rule" argument.

*Judgment affirmed. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED OCTOBER 5, 1998.

*J. Guy Sharpe, Jr.*, for appellant.
*Barry E. Morgan, Solicitor, Lawton W. Scott, Assistant Solicitor*, for appellee.