**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 14, 2014**

# In the Court of Appeals of Georgia

A14A1127. THE STATE v. SMITH.                           DO-041

DOYLE, Presiding Judge.

James Smith was charged with driving under the influence of alcohol to the extent that it was less safe for him to drive ("DUI less safe")[1] and failure to maintain his lane.[2] Following a hearing,[3] the trial court suppressed the results of two field

---

[1] OCGA § 40-6-391 (a) (1).

[2] OCGA § 40-6-48 (1).

[3] The suppression hearing was held on December 13, 2013, and the trial court entered its written order on January 13, 2014. Therefore, Georgia's new Evidence Code applies to this case. See Ga. L. 2011, p. 99, § 101 (providing that Georgia's new Evidence Code applies "to any motion made or hearing or trial commenced on or after" January 1, 2013).

sobriety tests because they were not properly administered.[4] The State appeals,[5] and we reverse for the reasons that follow.

We apply the following principles when reviewing a trial court's ruling on a motion to suppress:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[6]

---

[4] The trial court denied Smith's motion to suppress regarding the officer's reasonable suspicion to stop Smith's vehicle, probable cause, and implied consent. The trial court suppressed the results of horizontal gaze nystagmus ("HGN") and vertical gaze nystagmus ("VGN") field sobriety tests, but the State does not appeal that ruling.

[5] See OCGA § 5-7-1 (a) (4) (providing in relevant part that the State may appeal "[f]rom an order . . . or judgment suppressing or . . . excluding the results of any test for alcohol or drugs in the case of motions made and ruled upon prior to the impaneling of a jury or the defendant being put in jeopardy, whichever occurs first").

[6] (Punctuation omitted.) *Brown v. State*, 293 Ga. 787, 803 (3) (b) (2) (750 SE2d 148) (2013).

2

"When the controlling facts are not in dispute, such as facts discernible from a videotape, we conduct a de novo review of both the facts and the law in determining the admissibility of the statement."[7]

So viewed, the record shows that on January 31, 2013, Kennesaw Police Department Detective Michael Maynard initiated a traffic stop after he observed Smith's vehicle weave, cross the center line multiple times, strike the right curb, and travel partly off of the roadway. Detective Maynard called for backup and then approached the vehicle and spoke to Smith, at which point he detected the odor of alcohol emanating from Smith's breath. Detective Maynard then returned to his vehicle to await Officer J. C. Ferguson, who arrived on the scene shortly thereafter, at approximately 12:45 a.m.

While speaking with Smith, Officer Ferguson detected the odor of alcohol coming from Smith and noticed that his eyes were bloodshot and watery, he mumbled, and his speech was slurred. When asked whether he had been drinking, Smith replied that he was coming from a business meeting and had consumed two glasses of wine and two beers, the last one at 11:00 p.m. Smith then complied with

---

[7] *Dennis v. State*, 293 Ga. 688, 691 (2) (748 SE2d 390) (2013).

the officer's request to exit his vehicle and approach the police car, walking unsteadily as he did so.

Smith refused Officer Ferguson's request to submit to an alcosensor evaluation, but agreed to submit to field sobriety tests; the tests were videotaped and the tape was played at the suppression hearing. Officer Ferguson testified at the hearing that Smith exhibited six out of six indicators of impairment and the existence of VGN during his HGN and VGN testing. Believing that Smith may have been impaired, Officer Ferguson also administered the "walk and turn" and "one leg stand" field sobriety tests.[8] Officer Ferguson testified that he observed five out of eight indicators of impairment during the walk and turn test and four out of four indicators during the one leg stand test.[9] According to Officer Ferguson, although it was drizzling and very

---

[8] Officer Ferguson testified that Smith was unable to properly recite a portion of the alphabet. The results of the alphabet test, however, were not addressed by the trial court in its order on Smith's motion to suppress and are not at issue on appeal.

[9] Officer Ferguson conceded at the hearing that although he indicated in his police report that Smith exhibited five out of six clues of impairment during the walk and turn test, he noted on the driver impairment form that Smith exhibited six out of six clues. Officer Ferguson further conceded that although his police report indicates that Smith exhibited three out of four clues of impairment during the one leg stand test, the driver impairment form reflects that he exhibited four out of four. Officer Ferguson testified that the discrepancies in the forms were "human error." We note that neither the police report nor the driver impairment form were included in the appellate record.

4

windy that night, which conditions he conceded could affect the dexterity and balance tests, he did not believe the conditions were dangerous, and he considered the "totality of the circumstances" when evaluating Smith's performance.

At the conclusion of the hearing, the trial court suppressed the results of the HGN, VGN, walk and turn, and one leg stand tests. In a written order, the court stated that it suppressed the test results because Officer Ferguson failed to comply with National Highway Transportation Security Administration ("NHTSA") standards while administering the tests. The court further concluded that because of the attendant weather conditions, specifically including the wet road surface, the walk and turn and one leg stand tests were "conducted in an unsafe manner," and "the discrepancies between Officer Ferguson's police report and the driver impairment form g[a]ve th[e trial] court doubt as to the propriety of [the] administration of [those tests]."

In a single enumeration, the State argues that the trial court erred by suppressing the results of Smith's walk and turn and one leg stand tests. We agree.

It is well-settled that although HGN and VGN tests constitute scientific procedures,

*[field] sobriety tests such as the walk and turn and the one leg stand, both of which demonstrate a suspect's dexterity and ability to follow directions, do not constitute scientific procedures.* And, testimony from an officer about a suspect's inability to complete such dexterity tests does not amount to testimony regarding scientific procedures, but instead amounts to testimony as to behavioral observations on the officer's part. Therefore, these two tests and any testimony concerning their administration are not subject to the standard . . . for determining whether a scientific procedure is admissible.[10]

Thus, a defendant's arguments regarding proper administration of walk and turn and one leg dexterity tests, including compliance with NHTSA standards, go to the weight of the evidence, not to admissibility.[11] Therefore, the trial court erred by suppressing

---

[10] (Citations and punctuation omitted; emphasis supplied.) *State v. Pastorini*, 222 Ga. App. 316, 318-319 (2) (474 SE2d 122) (1996). See also *Stewart v. State*, 280 Ga. App. 366, 368 (2) (634 SE2d 141) (2006); *Heller v. State*, 234 Ga. App. 630, 631-632 (2) (b) (507 SE2d 518) (1998); *Cann-Hanson v. State*, 223 Ga. App. 690, 691 (1) (478 SE2d 460) (1996); *U. S. v. Renfroe*, Case No. 4:13–mj–148–MSH (M. D. Ga. 2014) (order) ("The walk and turn test and the one[] leg stand test, however, are not scientific tests so they are not subject to [Federal Rule of Evidence] 702. Instead, these tests are lay observations[,] which are admissible under [Federal Rule of Evidence] 701.").

[11] See *Rowell v. State*, 312 Ga. App. 559, 562 (2) (a) (718 SE2d 890) (2011); *Stewart*, 280 Ga. App. at 368-369 (2); *Pastorini*, 222 Ga. App. at 319 (2). See generally OCGA § 24-7-701 (a) (setting forth rules for lay testimony regarding the witness's opinions and inferences).

the results of Smith's walk and turn and one leg stand tests based solely on its

conclusion that they were not properly administered.[12]

*Judgment reversed. Dillard, J., concurs. Miller, J., concurs in judgment only.*

---

[12] *Pastorini*, 222 Ga. App. at 319 (2). See OCGA § 24-4-402 ("All relevant evidence shall be admissible, except as limited by constitutional requirements or as otherwise provided by law or by other rules, as prescribed pursuant to constitutional or statutory authority, applicable in the court in which the matter is pending. Evidence which is not relevant shall not be admissible.").