**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER, J., and SENIOR JUDGE FULLER.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 30, 2025**

# In the Court of Appeals of Georgia

A25A1301. THE STATE v. CHAMBERS.

MERCIER, Judge.

Donald Chambers was arrested for driving under the influence and related traffic offenses and subsequently filed a motion to suppress evidence of his field sobriety tests, arguing that the State failed to properly conduct the tests.[1] Following a hearing, the trial court granted the motion, and the State appeals. For the following reasons, we affirm in part and reverse in part.

"Following the grant or denial of a motion to suppress, we construe the evidence in the light most favorable to uphold the findings and judgment of the trial court. Moreover, we accept the trial court's findings of fact and credibility

---

[1] Chambers stipulated "to the scientific basis" of the field sobriety tests and only challenged the administration of the tests.

determinations if there is any evidence to support them." *Newman v. State*, 375 Ga. App. 448, 448 (916 SE2d 484) (2025) (citation and punctuation omitted).

Viewed in this light, the evidence at the hearing showed the following. Officer Saverion White testified that, on May 3, 2023, she responded with her partner, Officer T. J. Choulat, to a single-car accident. A Honda Odyssey had collided with a guardrail on an exit ramp of Interstate 285 and come to rest partially blocking the lane. As White approached the vehicle, she observed Chambers sleeping in the driver's seat. After knocking on the vehicle several times with no response, White walked to the driver's side of the vehicle and opened the door, but Chambers still did not respond to the officer's commands. Choulat then began to perform a sternum rub on Chambers, and, after approximately five to ten minutes, Chambers began to wake up. White observed an open can of a malt alcohol beverage in the center cup holder of the vehicle, and she determined that the can was cold and half empty.

Once Chambers woke up, White asked him to exit the vehicle because the vehicle was still in drive and White needed to switch the gears. White began questioning Chambers and noticed that Chambers's "speech was slurred and slow." Chambers admitted that he had consumed alcohol, and White smelled alcohol on

Chambers's breath. When asked where he was coming from, Chambers claimed he was coming from the mall and believed that it was midnight. However, it was 5:10 a.m.

White determined that she should perform field sobriety tests on Chambers, and she administered the Horizontal Gaze Nystagmus ("HGN") test, the walk and turn test and the one-leg stand test. A video of the field sobriety tests was played at the hearing. White testified that Chambers's eyes failed to follow the pen in the HGN test, and he exhibited six of six possible clues for possible intoxication. For the walk and turn test, Chambers exceeded the number of steps, and he failed to walk heel to toe. White testified that Chambers demonstrated six of the six clues in the walk and turn test. White requested that Chambers perform the one-leg stand test and demonstrated it for him. However, while taking the test, Chambers failed to keep his balance and lowered his leg, and White testified that Chambers again demonstrated six out of six clues.

White determined that Chambers was a less safe driver due to finding Chambers unconscious in the driver's seat of the vehicle following a single car collision, his admission to consuming alcohol, the smell of alcohol on Chambers's breath, the open half-empty container of alcohol in the vehicle that was cold to the

touch, Chambers's slurred speech, his guess that the time was five hours earlier, and his performance on the field sobriety tests. Chambers was subsequently arrested, and he later filed a motion to suppress the field sobriety tests.

On cross-examination, White conceded that she did not perform the tests "perfectly." Specifically, White did not medically qualify Chambers prior to beginning the field sobriety tests. Further, on the walk and turn test, White failed to inform Chambers to walk in a straight line, to keep his arms at his side or to watch his feet.

The trial court held that, even in the absence of the field sobriety tests, there was probable cause to arrest Chambers for driving under the influence, less safe. However, the trial court ruled that the three field sobriety tests were performed so deficiently that the tests were inadmissible.

1. The State challenges the exclusion of this evidence on appeal, arguing that the trial court erred in analyzing the evidence using a *Daubert*[2] framework. As an initial matter, the State claims that Chambers did not argue that *Daubert* applied to his

---

[2] *Daubert v. Merrell Dow Pharmaceuticals*, 509 U. S. 579 (113 SCt 2786, 125 LE2d 469) (1993).

motion to suppress or at the hearing, thereby waiving the application of *Daubert*.[3] But

OCGA § 24-7-702 applies "the federal standard of admissibility of expert testimony

articulated in *Daubert . . .* to criminal cases."[4] *Coleman v. State*, 321 Ga. 476, 479 (1)

n.5 (915 SE2d 603) (2025); See also *Garrison v. State*, 319 Ga. 711, 725 (3) (b) (905

---

[3] Following evidence and argument at the hearing, the trial court requested proposed orders regarding *Daubert's* application to the field sobriety tests from the State and Chambers. The trial court requested the *Daubert* analysis due to changing case law and Chambers's argument that the field sobriety tests deviated from the standards. The State objected to the application of *Daubert*, as Chambers had not argued that *Daubert* applied to the field sobriety tests. However, the trial court reiterated that both sides had the opportunity to argue *Daubert* in proposed orders to the court. The State did not renew its objection, nor did it request additional time to prepare its proposed order, to file a supplemental brief or to hold a hearing regarding *Daubert*. "A party cannot acquiesce in a procedure by a trial court and then complain of it. Failure to object to the procedure amounts to a waiver." *Gnam v. Livingston*, 353 Ga. App. 701, 703 (2) (839 SE2d 200) (2020) (citation and punctuation omitted).

[4] Prior to the application of OCGA § 24-7-702 to criminal cases, Georgia courts applied the standard developed in *Harper v. State*, 249 Ga. 519 (292 SE2d 389) (1982),

> under which the trial court could admit scientific evidence only if it found that the party offering the evidence showed that (1) the general scientific principles and techniques involved are valid and capable of producing reliable results and (2) the person performing the test substantially performed the scientific procedures in an acceptable manner.

*Garrison*, 319 Ga. at 716 (1) (citation and punctuation omitted).

SE2d 629) (2024) (OCGA § 24-7-702 extended the *Daubert* standard to criminal cases effective July 1, 2022); *Dubois v. Brantley*, 297 Ga. 575, 580 (2) (775 SE2d 512) (2015) (OCGA § 24-7-702 "is based upon Federal Rule of Evidence 702").

Relevantly, OCGA § 24-7-702 (b) provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if:

(1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(2) The testimony is based upon sufficient facts or data;

(3) The testimony is the product of reliable principles and methods; and

(4) The expert has reliably applied the principles and methods to the facts of the case.

While Chambers did not expressly state that he was making a *Daubert* challenge in his motion, his arguments, in substance, raised issues central to a *Daubert* challenge. For example, Chambers argued that "[t]he field sobriety

6

evaluations in this case conducted by Officer[] White failed to follow the necessary procedures outlined by the NHTSA procedure manual and other relevant law enforcement guidelines." Chambers explicitly stated that he sought to exclude the evidence because the proffered testimony was unreliable. Further, "[u]nder OCGA § 24–7–702, it is the role of the trial court to act as a gatekeeper of expert testimony." *Yugueros v. Robles*, 300 Ga. 58, 67 (793 SE2d 42) (2016). As such, the trial court did not err by considering whether the evidence was admissible under *Daubert*, as codified in OCGA § 24-7-702.

(a) The State argues the trial court abused its discretion by granting Chambers's motion to suppress results of the HGN test. We disagree.

As a gatekeeper, the trial court was charged with considering White's "qualifications to testify as to the HGN test as well as the relevance and reliability of the proffered testimony based on the *Daubert* standard[.]" *Garrison*, 319 Ga. at 727 (3) (c) (i); accord *Newman*, 375 Ga. App. at 456-457 (4). Prior to conducting the test, White failed to medically clear Chambers, despite the fact that Chambers had just been in a motor vehicle collision. As such, the trial court did not abuse its discretion by determining that White failed to properly conduct the HGN test and by granting

7

Chambers's motion to suppress the HGN test. See *Garrison*, 319 Ga. at 724 (3) n. 22 (we review a trial court's evidentiary rulings for abuse of discretion); see also *Sultan v. State*, 289 Ga. App. 405, 408 (1) (657 SE2d 311) (2008) (trial court erred by failing to exclude HGN test, under *Harper* analysis, when officer failed to qualify defendant "as a suitable subject of an HGN test").

(b) The State also argues that the trial court erred by excluding the walk and turn and one-leg stand tests on *Daubert* grounds. As to these tests, we agree.

While Georgia courts have not yet ruled on whether these tests fall within OCGA § 24-7-702, the Legislature instructed Georgia courts to examine federal case law applying the *Daubert* standard to aid in our analysis.[5] See OCGA § 24-7-702 (f). Federal courts have found that, unlike the HGN test, "the one-leg stand and walk and turn test are not scientific tests and consequently are not subject to Federal Rule of Evidence 702." *United States v. Henderson*, No. 4:14–mj–162–MSH, at *3 (M. D. Ga. June 2, 2015) (footnote omitted); see also *United States v. Nguyen*, No. CR F 06–0075

---

[5] Of note, previously, under the *Harper* standard, the Georgia Supreme Court differentiated between scientific tests, "which must meet standards of validity and reliability, such as the HGN test" and "a simple physical dexterity exercise observable by the average layperson, such as the walk and turn test or the one-leg stand test[.]" *Mitchell v. State*, 301 Ga. 563, 566 (1) (802 SE2d 217) (2017) (disapproved in part on other grounds in *State v. Turnquest*, 305 Ga. 758, 775 (4) n. 15 (827 SE2d 865) (2019)).

AWI at *8 (1) (E. D. Ca. February 25, 2008) ("Because psychomotor field sobriety tests [such as walk and turn and one-leg stand] are considered non-scientific or non-technical in nature, a description of the test and a defendant's performance on the test may generally be admitted into evidence as lay opinion testimony under Rule 701, without the need for expert testimony."); *United States v. Hardie*, No. 4:16-mj-88 -MSH at *3 (I) (M. D. Ga. July 21, 2017) ("the one-legged stand and walk and turn test are not scientific tests, but . . . the HGN is a scientific test"). As such, the trial court's conclusion that the walk and turn test and the one-leg stand tests were subject to *Daubert* requirements was in error.

2. The trial court went on to find that, even if *Daubert* did not apply to the one-leg stand test and the walk and turn test, the tests were inadmissible due to unfair prejudice under OCGA § 24-4-403 ("Rule 403"). The trial court found that the tests "were performed without necessary medical pre-qualifications, accurate instructions, or indications that [Chambers] understood the instructions." As such, the trial court concluded that "the probative values of the One Leg Stand Test and Walk-and-Turn Tests in this case are substantially outweighed by the danger of unfair prejudice and should be excluded pursuant to OCGA § 24-4-403."

Rule 403 provides that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403. "A trial court's decision to exclude evidence under Rule 403 is an extraordinary remedy which should be used only sparingly. Thus, in reviewing issues under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Mills v. State*, 320 Ga. 457, 464-465 (3) (b) (910 SE2d 143) (2024) (citations and punctuation omitted). "The reason for such caution is that relevant evidence in criminal trials is inherently prejudicial. . . . [T]he major function of Rule 403 is to exclude evidence of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Flading v. State*, 327 Ga. App. 346, 352 (2) (759 SE2d 67) (2014) (citations and punctuation omitted).

> Under Rule 403, the term 'unfair prejudice' speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged. The prejudice referenced in Rule 403 addresses prejudice to the integrity of the trial process, not prejudice to a particular party or witness.

*Webb v. State*, 359 Ga. App. 453, 458 (2) n. 17 (858 SE2d 546) (2021) (citation and punctuation omitted).

Here, the evidence of Chambers's actions during the test, such as that he failed to keep his balance during the one-leg stand test and walked more steps than demonstrated in the walk and turn test, is relevant to the determination of his ability to drive safely. See *Heller v. State*, 234 Ga. App. 630, 632 (2) (b) (507 SE2d 518) (1998) ("sobriety tests such as the 'walk and turn' and the 'one leg stand,' . . . demonstrate a suspect's dexterity and ability to follow directions") (citation and punctuation omitted). While evidence was also presented that White failed to properly administer the non-scientific field sobriety tests, that evidence addresses "the weight of the evidence from these tests and not . . . its admissibility." *Stewart v. State*, 280 Ga. App. 366, 368-369 (2) (634 SE2d 141) (2006). See also *Rowell v. State*, 312 Ga. App. 559, 562 (2) (a) (718 SE2d 890) (2011) ("arguments concerning the proper administration of the one-leg-stand test . . . goes to the weight of the evidence and not to its admissibility") (disapproved in part on other grounds in *State v. Turnquest*, 305 Ga. 758, 775 (4) n. 15 (827 SE2d 865) (2019). An officer's failure to correctly administer a dexterity test does not call for exclusion of the evidence, as "[t]he weight

and credibility of evidence such as this should be left for jury determination." *State v. Pastorini,* 222 Ga. App. 316, 319 (2) (474 SE2d 122) (1996) (the trial court's suppression of one-leg stand and walk and turn tests due to the officer's failure to correctly administer the tests was reversed so that a factfinder could determine the weight to give the evidence) (disapproved in part on other grounds by *Turnquest*, 305 Ga. at 775 (4) n. 15). As such, the trial court abused its discretion by concluding that the probative value of the evidence was substantially outweighed by its prejudice. See *Cann-Hanson v. State*, 223 Ga. App. 690, 691 (1) (478 SE2d 460) (1996) (evidence that the officer did not fully comply with NHTSA guidelines in the administration of non-scientific field sobriety tests "did not destroy the probative value of the tests"). We therefore reverse the trial court's ruling granting the motion to suppress the walk and turn and the one-leg stand tests.

*Judgment affirmed in part and reversed in part. Dillard, P. J., and Senior Judge C. Andrew Fuller concur.*