## S00A1063. PULLIN v. THE STATE.
(534 SE2d 69)

THOMPSON, Justice.

Stewart Pullin is currently under indictment and facing trial for multiple offenses, including alternative counts of malice and felony murder, in connection with the shooting death of his former wife. Pullin filed a motion in limine seeking to prohibit the prosecution from offering expert testimony based upon an analysis of cellular telephone records to establish the location from which Pullin made certain cellular calls at the time of the shooting. After a lengthy evidentiary hearing, the trial court determined that the scientific procedure in question may be verified with such certainty that it is competent evidence in a court of law. We granted interlocutory review and affirm.

At approximately 6:36 a.m. on December 4, 1998, Pullin's ex-wife was shot and killed in a van in the garage of her home in Lithonia, Georgia. When the investigation focused on Pullin, officers questioned him concerning his whereabouts that morning. Pullin gave them a statement in which he claimed that he awoke in his home in Stockbridge, Georgia (approximately 30 miles from Lithonia) at 5:30 a.m.; that he telephoned his employer at about that time to report that he was ill and would not be in to work that day; and that he remained at home until 7:30 a.m. when he left to take his children to school. Pullin's home telephone records reflected no such call to his employer. However, the police learned through cellular telephone records that Pullin had placed a call to his employer at 5:31 that morning on his cellular telephone from a cell site near Lithonia, a few miles from the victim's home. The State seeks to introduce this evidence to refute Pullin's custodial statement that he was at home in Stockbridge until 7:30 a.m. The State also wants to introduce two other calls made from Pullin's cellular telephone which would tend to place him in the vicinity of the crime: a 7:09 a.m. call placed to Pullin's own home which was serviced by the same cell site in Lithonia as the first call, and a second call to his home at 7:10 a.m. which was serviced by a cell site that is located between Lithonia and Pullin's home in Stockbridge. Pullin challenges the admissibility of expert testimony pinpointing the location from which those cellular telephone calls were placed, an issue of first impression in this state.

In determining whether a scientific principle or technique has reached a stage of verifiable certainty that it is competent evidence in a court of law, *Harper v. State*, 249 Ga. 519 (1) (292 SE2d 389) (1982) controls.

[I]t is proper for the trial judge to decide whether the procedure or technique in question has reached a scientific stage of verifiable certainty, or . . . whether the procedure "rests upon the laws of nature." The trial court may make this determination from evidence presented to it at trial by the parties; in this regard expert testimony may be of value. Or the trial court may base its determination on exhibits, treatises or the rationale of cases in other jurisdictions. . . . The significant point is that the trial court makes this determination based on the evidence available to him rather than by simply calculating the consensus in the scientific community.

Id. at 525-526.

At the evidentiary hearing, the State produced six expert witnesses who testified to the accuracy and reliability of records estab-

lishing the location of a tower which services a particular cellular call. In essence, the evidence established that a radio signal from a digital cellular telephone such as the one Pullin used is transmitted to the cellular tower which is geographically closest to the handset; if the handset moves out of the geographical area covered by the originating site during the call, the call is relayed or "handed off" to the next nearest site; the two cells which are the "originating" and "terminating" point of the call are automatically recorded; this "historical data" is relied upon for billing purposes, and has been an integral part of fraud investigation and prevention. The experts consistently testified that the historical data is accurate and has never been found to be incorrect. One expert opined with "100 percent certainty" that based on the information in this case, the calls at issue could not have originated in Stockbridge. Pullin presented no expert testimony in opposition, but argued that the State failed to meet its burden of establishing admissibility of the evidence under *Harper*.

In a well reasoned and detailed order, the trial court thoroughly summarized the evidence which formed the basis for its decision to admit the evidence. As *Harper* requires, the court evaluated the testimony of the State's experts. It also considered exhibits consisting primarily of search warrants obtained in this state using cellular telephone historical data as the basis for probable cause. Finally, it analyzed case law from foreign jurisdictions which have accepted the scientific principles of cellular telephone technology. See, e.g., *United States v. Weathers*, 169 F3d 336 (6th Cir. 1999); *United States v. Sepulveda*, 115 F3d 882 (11th Cir. 1997); *United States v. Pervaz*, 118 F3d 1 (1st Cir. 1997); *United States v. Brady*, 13 F3d 334 (10th Cir. 1993). Upon consideration of the foregoing factors, the court reached the conclusion that the geographic location of the cell calls in question is based on sound scientific theory and that analysis of the data can produce reliable results.

Pullin takes exception to the fact that no treatises were offered that dealt with the specific issue now before the Court. However, the State's expert explained that the basic properties of cellular technology are well understood, and "not a source of argument." And while we acknowledge that there is no authority precisely on point, the basic principles of cellular technology have been widely accepted. See *Weathers*, supra; *Sepulveda*, supra; *Pervaz*, supra; *Brady*, supra.

We conclude that the trial court properly exercised its discretion in applying the *Harper* analysis and concluding that the technology in question has reached a scientific stage of verifiable certainty to be admissible in the trial of this case.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 11, 2000.

*Brian Steel,* for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Jeanne M. Canavan, Assistant District Attorneys,* for appellee.