## A00A2261. MUIR v. THE STATE.
(545 SE2d 176)

BARNES, Judge.

Jamie P. Muir appeals from her convictions of speeding, driving under the influence to the extent she was a less safe driver (OCGA § 40-6-391 (a) (1)), and driving with an alcohol concentration greater than 0.10 grams (OCGA § 40-6-391 (a) (5)). All of her enumerations of error relate to jury charges given or refused by the trial court. Because we agree that the trial court erroneously charged the jury, we must reverse Muir's less safe conviction under OCGA § 40-6-391 (a) (1), reverse her per se conviction under OCGA § 40-6-391 (a) (5), affirm her speeding conviction, vacate her merged sentence, and remand this case to the trial court for proceedings not inconsistent

---

with this opinion.

The record shows that Muir was stopped by a City of Atlanta police officer for speeding (55 mph in 35-mph zone). When the police officer smelled "a strong odor of alcoholic beverage on her breath and person," he asked her if she had had anything to drink. When she told him that she had drunk "three to four beers," he asked her to step out of the car and participate in a series of field sobriety tests. The police officer testified that she had bloodshot eyes and slurred speech. When Muir performed the field sobriety tests (horizontal gaze nystagmus, nine-step walk and turn, the one-leg stand, and a preliminary breath test), the police officer detected clues from each test demonstrating that she was under the influence of alcohol. He then arrested her for driving under the influence of alcohol, gave her the implied consent warning, and tested her breath on an Intoxilyzer 5000 machine. The machine revealed blood alcohol concentrations of 0.125 and 0.115 grams. The officer further testified that, in his opinion, Muir was a less safe driver that evening based upon the "totality of the circumstances; the subject's less-than-safe driving; her speeding; her bloodshot eyes; her slurred speech; [and] her performance on the field evaluation. . . ."

Muir testified that she drank only three beers and half of a Yagermeister shot in the four-hour period before she was stopped by the police officer. In her opinion, she was "fine to drive" and not under the influence of alcohol. An expert witness testified for the defense that, in his opinion, women score higher than men on the Intoxilyzer 5000 machine because it is calibrated to a man's physiological factors. In his opinion, "it exaggerates the score and it can more than double the score on women who have the same amount to drink as men, same size, and everything." He further testified that, based upon the number of drinks Muir stated she drank, her true blood alcohol concentration was 0.05 grams.

1. In her first enumeration of error, Muir contends the trial court erred by charging the jury as follows:

> I charge you, ladies and gentleman, that a chemical analysis of a person's blood, urine, breath or other bodily substance *shall be considered valid* if their analysis was performed according to the methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation, and by individuals possessing a valid permit issued by the Division of Forensic Sciences for this purpose. And if the arresting officer at the time of the arrest advised the person arrested of her right to an additional chemical test or tests of her blood, urine, breath, or other bodily substance.

(Emphasis supplied.) According to Muir, this charge violated her due

process rights under the Fifth and Fourteenth Amendments to the United State Constitution and under Art. I, Sec. I, Pars. I and II of the Georgia Constitution because it creates a mandatory presumption in favor of the State. Specifically, "the jury was told that [the] State's test has a conclusive presumption of '*validity*' and may not be questioned or discredited." The State, relying upon a panel decision of this Court in *Johnson v. State*, 231 Ga. App. 215 (498 SE2d 778) (1998), asserts this issue has already been decided adversely to appellant and that it is a proper statement of the law found in OCGA § 40-6-392 (a) (1) (A).[1]

(a) In *Burke v. State*, 233 Ga. App. 778 (505 SE2d 528) (1998), this Court held that a trial court did not err by refusing to give a charge based upon this same statute. The opinion states:

> The statute at issue deals with the admissibility of chemical test results. See OCGA § 40-6-392 (a). The determination of whether evidence should be admitted pursuant to OCGA § 40-6-392 (a) (1) (A) is never a jury question. *Gaston v. State*, 227 Ga. App. 666, 670 (490 SE2d 198) (1997). The only relevant issue for the jury was the weight to give that evidence. See *Beaman v. State*, 161 Ga. App. 129, 130-131 (3) (291 SE2d 244) (1982). The trial court did not err in refusing to instruct the jury as to the foundation requirements of the statute.

Id. at 779 (3).

Accordingly, the trial court in this case erred by charging the jury on this statute. Our opinion in *Johnson*, supra, does not alter this result. In *Johnson*, the trial court gave the following charge: " 'I charge you that breath alcohol measuring equipment approved by the State Crime Lab is considered accurate if properly operated.' " 231 Ga. App. at 216. This charge differs significantly from the charge

---

[1] This provision provides:
(a) Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person in violation of Code Section 40-6-391, evidence of the amount of alcohol or drug in a person's blood, urine, breath, or other bodily substance at the alleged time, as determined by a chemical analysis of the person's blood, urine, breath, or other bodily substance shall be admissible. Where such a chemical test is made, the following provisions shall apply: (1) (A) Chemical analysis of the person's blood, urine, breath, or other bodily substance, *to be considered valid under this Code section,* shall have been performed according to methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation on a machine which was operated with all its electronic and operating components prescribed by its manufacturer properly attached and in good working order and by an individual possessing a valid permit issued by the Division of Forensic Sciences for this purpose. . . .
(Emphasis supplied.)

given by the trial court in this case. It instructs the jury that the equipment is considered accurate in general. It does not, as in this case, imply that the analysis or result for a particular individual "shall be considered valid."

(b) Charging errors are presumed harmful unless it appears from the entire record that the error is harmless. *Foskey v. Foskey*, 257 Ga. 736, 737 (2) (363 SE2d 547) (1988); *Shaw v. State*, 238 Ga. App. 757, 759 (1) (519 SE2d 486) (1999). In this case, we cannot say that the charging error was harmless with regard to Muir's less safe (OCGA § 40-6-391 (a) (1)) and per se convictions (OCGA § 40-6-391 (a) (5)).

In *Lattarulo v. State*, 261 Ga. 124 (401 SE2d 516) (1991), our Supreme Court recognized that breath test results are admissible when the statutory foundation requirements are met. Id. at 127. However, it also noted that "[a]n accused may always introduce evidence of the possibility of error or circumstances that might have caused the machine to malfunction. Such evidence would relate to the weight rather than the admissibility of breathalyzer results." Id. at 126 (3).

In this case, Muir did precisely what the Supreme Court envisioned in *Lattarulo*. Her defense to the DUI charges against her was that the breathalyzer machine overstated her true blood alcohol concentration and that the amount of alcohol she admitted drinking did not render her a less safe driver. The trial court's charge to the jury nullified this defense because it mandated that the jury find valid the test results showing that her blood alcohol level exceeded the legal limit. From this mandatory finding alone, a reasonable jury might have convicted Muir of both the less safe and per se charges against her. It could have also caused the jury to discredit Muir's testimony that she had consumed only three beers and half of a Yagermeister shot over a four-hour period and was therefore a safe driver.

As a result, we cannot find the trial court's charging error harmless with regard to her less safe and per se convictions and must reverse them. Since the breathalyzer evidence would have had no impact on her speeding conviction, we affirm it. Finally, since the trial court merged Muir's speeding and less safe convictions into her per se conviction for purposes of sentencing, we must vacate her sentence and remand this case to the trial court for proceedings not inconsistent with this opinion.

2. Muir's remaining enumerations of error are rendered moot by our holdings in Division 1.

*Judgment affirmed in part and reversed in part and sentence vacated. Blackburn, C. J., and Eldridge, J., concur.*

DECIDED FEBRUARY 14, 2001.

*Spruell, Taylor & Associates, Billy L. Spruell, Melinda D. Taylor,* for appellant.

*Joseph J. Drolet, Solicitor, Craig E. Miller, Marko L. Burgar, Assistant Solicitors,* for appellee.