A01A1222, A01A1471. BRANDENBURG et al. v. ALL-FLEET REFINISHING, INC.; and vice versa.
(555 SE2d 508)
ANDREWS, Presiding Judge.

### Case No. A01A1222

Terry Brandenburg and Spectrum, Inc. (Brandenburg) appeal from the judgment entered after a bench trial on the issue of damages for misappropriation of trade secrets from All-Fleet Refinishing, Inc. After hearing the evidence, the court awarded All-Fleet $79,205 on its claims for lost profits and unjust enrichment, $158,410 in exemplary damages, and $79,205 in attorney fees. Brandenburg claims on appeal that the evidence was insufficient to support the award. For the following reasons, we conclude the evidence was sufficient to support the damages awards but insufficient to support the award of attorney fees.

The evidence in this case, taken in the light most favorable to the judgment, was as follows. All-Fleet, incorporated in 1993, is in the business of heavy commercial vehicle collision paint graphics. In 1997, Terry Brandenburg started a similar business at Spectrum. At that time, Brandenburg hired four of All-Fleet's employees. In its complaint, All-Fleet alleged that these employees stole computer software from All-Fleet which formed the basis of its operations. This software allowed Spectrum to gain an unfair advantage over All-Fleet in bidding for jobs and dealing with customers.

Brandenburg did not file an answer, and the court granted All-Fleet a default judgment. Accordingly, liability was established, and the case went to trial only on the issue of damages.

J. D. Walker, president of All-Fleet, testified at trial and introduced evidence that his business had increased considerably from 1993 to 1996, then dropped suddenly in 1997. Walker stated that he went from thirty-eight employees down to six because the business had "dried up."

He said he kept up with market conditions and noted that the economy as a whole had continued to grow since 1997. He also intro-

duced evidence that the total number of commercial vehicles weighed in the State had increased during those years. Walker stated that he also kept up with his customers' business conditions through trade publications, and he could not identify any economic factor which would have caused the decline in All-Fleet's gross profits since February 1997. He said that, in his opinion, All-Fleet began losing customers after February 1997, because Brandenburg had access to the operations and customers of All-Fleet and had the ability, because of the stolen computer software, to underbid All-Fleet on jobs.

All-Fleet's expert, Richard Guynn, testified that he reviewed numerous documents from All-Fleet, including its sales and financial statements. Guynn said that from 1993-1996, All-Fleet's sales roughly doubled each year and gross profits "increased dramatically." In looking at market conditions such as the increase in the number of trucks registered in the State, Guynn estimated that All-Fleet's sales should have increased at the rate of ten percent a year. Walker testified to a net profit as 30 percent of sales, and Guynn used this figure as a reasonable estimate. Guynn testified that it would be reasonable to assume that the theft of trade secrets caused the decline in All-Fleet's business, assuming there were no other market conditions identified that could account for it.

Brandenburg's expert, Susan Gilbert, testified that she disagreed with Guynn's conclusions about the projected growth of All-Fleet's business. She gave several other possible reasons for the decline in revenue other than the theft of the software. Gilbert also stated that Guynn's thirty percent profit on sales was high and that for the automotive repair business, which was the closest comparable category she could find, average returns on sales were around five percent.

After hearing the evidence, the trial court awarded damages for lost profits, exemplary damages, and attorney fees. This appeal followed.

"In a bench trial, as here, the trial court sits as the trier of fact and the court's findings will not be set aside unless clearly erroneous. Since the clearly erroneous test is the same as the any evidence rule, an appellate court will not disturb the factual findings of the trial court when there is any evidence to sustain such findings." (Footnotes omitted.) *BMH Real Estate Partnership v. Montgomery*, 246 Ga. App. 301, 302 (1) (540 SE2d 256) (2000).

1. The evidence, as discussed above, was sufficient to support the award of lost profits. Contrary to Brandenburg's claims on appeal, the court did not err in hearing the testimony of All-Fleet's president or its expert witness. The admission or exclusion of evidence is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *American Petroleum*

*Products v. Mom & Pop Stores*, 231 Ga. App. 1, 7 (3) (497 SE2d 616) (1998). Moreover, when the judge sits as the trier of fact, it is presumed that he will consider only legally admissible evidence. *Schaffer v. City of Marietta*, 220 Ga. App. 382, 384 (469 SE2d 479) (1996).

Further, as All-Fleet points out, in computing the lost profits, the court did not use the gross sales loss figure of thirty percent put forward by All-Fleet's expert, but the much lower five percent figure testified to by Brandenburg's expert. In addition, the court found that Brandenburg's expert gave no facts to support her opinion that the downturn in All-Fleet's business was attributable to the general economic slowdown following the Olympics. Accordingly, there was evidence to support the trial court's findings on this issue, and there was no error.

2. Brandenburg also argues the trial court erred in awarding damages for unjust enrichment. Because the court's order clearly states that it awarded no separate damages for unjust enrichment and makes no findings of fact on this claim, we need not address this enumeration.

3. Next, Brandenburg claims the trial court erred in not allowing testimony on the spreadsheets developed for Spectrum by All-Fleet's former employees. At trial, Brandenburg called Chris Acres, one of the former employees of All-Fleet who went to work with Spectrum and who the complaint alleged had taken the estimate software. All-Fleet objected to a portion of his testimony concerning the information he used in preparing spreadsheets for Spectrum. Counsel contended that this went to liability, which had already been determined.

The court correctly sustained the objection. This evidence was irrelevant on the issue of damages. Moreover, Brandenburg himself testified that he had no need for the computer software stolen from All-Fleet and used only Microsoft EXCEL in his business.

4. In his next enumeration, Brandenburg claims the trial court erred in awarding exemplary damages. He contends there was no evidence of wilful and malicious conduct which would support such an award and also argues that these damages were not pled for in the complaint.

As to this latter claim, we note that the court awarded exemplary damages under OCGA § 10-1-763 (b). This section provides that under the Georgia Trade Secrets Act, a court may award exemplary damages if it finds that wilful and malicious misappropriation exists. Unlike OCGA § 51-12-5.1 (d) (1), there is no requirement in this Code section that punitive damages be specifically asked for in the complaint. Accordingly, the case relied on by Brandenburg in support of his argument is not persuasive.

We also conclude that there was evidence to support the trial

court's finding of wilful and malicious misappropriation. The trial court found that Brandenburg's actions in hiring All-Fleet's employees, stealing its software, and actively soliciting its customers were wilful and malicious. There was evidence at trial to support this finding, and we will not disturb it on appeal.

5. Lastly, Brandenburg claims the trial court erred in awarding attorney fees. OCGA § 10-1-764 provides that if the court finds wilful and malicious misappropriation, the court may award reasonable attorney fees to the prevailing party. We have already determined that the court could correctly find that the misappropriation was wilful and malicious.

Brandenburg also argues that there was no evidence that the attorney fees awarded were reasonable. We agree.

All-Fleet's attorney testified at the close of the evidence that his fee agreement with All-Fleet was for one-third of the recovery amount. He stated that it was his opinion that this was a fair and reasonable fee in this case.

"A court may consider a contingent fee agreement and the amount it would have generated as evidence of usual and customary fees in determining both the reasonableness and the amount of an award of attorney fees." *Southern Cellular Telecom v. Banks*, 209 Ga. App. 401, 403 (1) (433 SE2d 606) (1993). But,

> [e]vidence of the existence of a contingent fee contract, without more, is not sufficient to support the award of attorney fees. An attorney cannot recover for professional services without proof of the value of those services. A naked assertion that the fees are "reasonable," without any evidence of hours, rates, or other indication of the value of the professional services actually rendered is inadequate.

(Citations omitted.) *Hsu's Enterprises v. Hospitality Intl.*, 233 Ga. App. 309, 311 (2) (502 SE2d 776) (1998).

We therefore reverse the award of attorney fees and remand this case to the trial court for further proceedings consistent with this opinion.

6. All-Fleet's motion for penalty for frivolous appeal is denied.

### Case No. A01A1471

In this case, All-Fleet contends the trial court erred in denying its motion to dismiss Brandenburg's appeal. All-Fleet moved to dismiss claiming that Brandenburg's failure to timely pay costs resulted in an inexcusable delay in transmitting the record to this Court.

OCGA § 5-6-48 (c) provides that a transcript must be filed within 30 days after the filing of a notice of appeal unless an extension of time is requested as provided by OCGA § 5-6-39. The superior court may, after notice and hearing, order an appeal dismissed for a party's failure to file a transcript on time only if the delay was (1) unreasonable, (2) inexcusable, and (3) caused by such a party. OCGA § 5-6-48; *Sellers v. Nodvin*, 262 Ga. 205 (415 SE2d 908) (1992). Whether or not to dismiss a notice of appeal for delay in paying costs rests in the sound discretion of the trial court when the grounds to dismiss have been met. In reviewing a finding of unreasonable and inexcusable delay in filing a transcript, this court will not disturb the lower court's finding absent an abuse of discretion.

(Citations and punctuation omitted.) *Stone v. Boyne*, 245 Ga. App. 868, 869 (539 SE2d 209) (2000). We have determined that a delay in excess of 30 days is prima facie unreasonable and inexcusable, but this presumption is subject to rebuttal if the party comes forward with evidence to show that the delay was neither unreasonable nor inexcusable. Id. at 870.

Here, the trial court held a hearing on All-Fleet's motion and, in a detailed order, found the delay was excusable because it appeared to have been caused by the insurance carrier rather than the party. The court also found that the delay did not directly prejudice the appellee.

After reviewing the record and transcript of the hearing, we conclude there was no abuse of discretion in the trial court's determination. Accordingly, the judgment in Case No. A01A1471 is affirmed.

*Judgment affirmed in part, reversed in part and case remanded in Case No. A01A1222. Judgment affirmed in Case. No. A01A1471. Eldridge and Miller, JJ., concur.*

DECIDED OCTOBER 15, 2001 — ▮▮▮▮▮▮▮▮▮

*Hawkins & Parnell, Paul M. Hawkins, H. Lane Young II, Ernest T. Brown*, for appellants.

*Smith, Wallis & Scott, Kenneth A. Smith, James W. Wallis, Jr.*, for appellee.