A01A2305. CROMER v. MULKEY ENTERPRISES, INC. et al.
(562 SE2d 783)

POPE, Presiding Judge.

Sandra Cromer was injured in a minor car accident in which the person causing the accident admitted responsibility. A jury heard evidence on damages and causation and returned a verdict of $85,000 in favor of Cromer. Despite the victory, she contends on appeal that the verdict was against the weight of, or contrary to, the evidence and that the trial court erred by limiting the testimony of her expert witness.

In April 1996, in stop-and-go traffic, Cromer was struck from behind in a chain-reaction accident. Jeffrey Cull, driving a truck for his employer Mulkey Enterprises, Inc., failed to brake in time to avoid hitting one vehicle, which then struck Cromer's car, which, in turn, lightly tapped the vehicle in front of her. The damage to Cromer's car was estimated at between $600 and $750. Cromer initially sought treatment from a doctor, a massage therapist, and a chiropractor. Eleven months after the accident, Cromer sought treatment from Dr. Plas James, who diagnosed Cromer as having herniated disks in her neck and lower back. James treated Cromer with injections, physical therapy, and multiple surgeries for neck and lower back pain. Two years after the accident, Cromer sought treatment from Dr. Rajiv Pandya for right shoulder pain. He diagnosed Cromer with a torn rotator cuff. Cromer had two additional surgeries and physical therapy for that injury. In all, Cromer incurred $222,968 in medical expenses. Both Dr. James and Dr. Pandya concluded that Cromer is permanently disabled and that the cause of her injuries was the accident in question. Cromer also produced evidence of lost past and future income exceeding $1 million. The jury awarded Cromer $85,000.

1. In two separate enumerations, Cromer contends the verdict was contrary to the evidence and justice, and against the weight of the evidence. We disagree.

Although Cromer presented evidence to support the conclusion that her medical treatment and lost income were the result of the accident caused by Cull, Mulkey Enterprises and Cull (hereinafter "Mulkey") presented evidence to contradict that conclusion. Mulkey introduced evidence that Cromer failed to fully disclose her medical history, including some of her pain and its sources, to Dr. James and Dr. Pandya, which partially undermined their opinions that the Cull accident was the cause of her injuries. Cromer also had two other automobile accidents during the years following the accident at issue, one of which included injuries, and at least one lifting injury that could have affected her back. It was also shown that Cromer had other medical problems, including some related to her shoulder and

collarbone. Finally, the physician who first treated her testified that her later surgeries were not related to the Cull accident.

"Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence." (Citations and punctuation omitted.) *MARTA v. Green Intl.*, 235 Ga. App. 419, 420 (1) (509 SE2d 674) (1998). Here, there is evidence supporting the jury finding that less than all of Cromer's alleged damages were caused by the Cull accident.

2. Cromer also contends the trial court improperly excluded material evidence. Cromer intended to call Dr. Alan James Watts, Ph.D., a physicist, to give his expert opinion in the field of biomechanics, including to opine that the Cull accident caused her injuries. On the first day of trial, Mulkey moved in limine to exclude this testimony. Mulkey argued that Watts' testimony was not outside the knowledge of the jury; that it was cumulative of other testimony; and that Watts was not sufficiently informed about the facts. The court denied the motion, but explained that it might prohibit Dr. Watts from testifying about certain matters.

When Cromer called Dr. Watts to the stand during the trial, Mulkey renewed its motion. Mulkey objected to Dr. Watts giving opinions in the field of medicine as opposed to accident reconstruction. Mulkey also argued that Watts was not qualified to opine that the Cull accident caused the specific injuries that Cromer had suffered. Further, Mulkey urged that the testimony was cumulative of the testimony of Dr. James and Dr. Pandya, both of whom testified that the Cull accident was the cause of Cromer's injuries.

At the court's request, Cromer said that Watts was going to explain:

> how the accident occurred. He's going to, based on the testimony that we've elicited from the witnesses, the actual parties, people involved in the accident, . . . and from the damage reports, etc., he will assess the relative speeds of the vehicles at the impact. He will then take that information and, using his physicist background and his extensive study in the field of biomechanics over the last seven years, including studies of impacts and low-speed rear-end impacts in particular, he will then be able to render an opinion as to . . . whether an individual could sustain the type of injuries involved in this accident.

Cromer later said that Watts would explain how the accident affected the physical components of her body, such as her vertebrae and the

rotator cuff. "He is going to testify that he knows enough about the makeup of the disk, of the vertebrae, of the bone, all of the structures of the physical anatomy of the human body to render an opinion about the effect . . ." of the accident on her body.

The court was concerned that the opinion went too far. The court said,

> Now, the gentleman may testify as to how the incident occurred, what manner it occurred, the velocity that he believed the vehicles were traveling. And he could even testify in my opinion what — how he believed the body would have reacted inside the cabin. But I'm not going to let him say that he reached the next level of conclusion and that is that it was a cause of the condition found to exist in the plaintiff's body by Dr. James.

Upon this ruling, Cromer proffered the witness. Dr. Watts testified that he received a degree with honors in physics in 1965 and a Ph.D. in physics in 1969, both from the University of Exeter in England. Dr. Watts explained that biomechanics is the application of mechanics to anatomy and that it is a university study. For 22 years he has studied the behavior of materials under different levels of stress and impact and assault. He identified resources that he had consulted in forming his analysis of impacts and how they affect the human body, including data published by the Society of Automotive Engineers, which address such things as cadaver tests and volunteer tests, and various books that address the movement and injury mechanisms of the human neck. He has given seminars on low-speed automobile accidents and has written a book addressing low-speed impacts and biomechanics. The witness explained that he could

> tell you which cervical disk is most likely to be injured, based on the radiography tests that have been published. . . . They've taken volunteers at relatively low speeds such as two-and-a-half miles an hour, they have allowed a person sitting in a sled to come to an abrupt halt traveling backwards that simulates a rear-ender. They have then used x-rays put in a [video] to actually study the structure of how the neck bends. Based on that, they have observed that the largest bending movement occurs at the C-5, C-6 region, which is the most vulnerable part of the neck.

Finally, Dr. Watts noted that he has been qualified as an expert in the field of biomechanics to render an opinion about the likelihood of injury following an automobile accident in five other states and several federal courts.

During the questioning, the court further elaborated on its concern,

> Okay. The point that I'm making, and you can well see it, is that I can conceive of you being able to tell me how the body is going to react after a collision in the cabin of the car. But I cannot see you being able to tell me what cervical disks or that the cervical disk or lumbar disks on the human being that was in the car were caused by the incident in question. And that's the point that's being made here. And if [Dr. Watts] is not planning on doing that, that's fine. . . .

The trial court then concluded by stating,

> I understand that he has — he can relate that there are studies that look at some kind of methods to, and are able to state with or without reasonable certainty that if the body moves any certain direction after the vehicle being hit in a certain way, that most likely, or that more often than not, it may cause an injury at a certain cervical disk level. It is still my opinion, and I still have some more authority that helps me with it, and I'll cite it to you. It's in *Naimat v. Shelbyville Bottling Co., Inc.*[, 240 Ga. App. 693 (524 SE2d 749) (1999). This case] bolsters my feeling about whether or not he can tell me that the cervical disk problem, the shoulder problem, and the other problems suffered by your plaintiff [were] caused in any way by the collision in question. Therefore, I'm going to stay with my ruling. The answer is no.

At that point, Cromer withdrew the witness. "Your Honor, since this witness was being offered primarily for the purpose of that very opinion, we're not going to offer his testimony."

After trial, the court denied Cromer's motion for new trial on this same point. In the order, the court stated that it limited Dr. Watts' testimony because (1) it was cumulative of other testimony; (2) Watts had not seen all the relevant data regarding the accident; and (3) the testimony could be unhelpful, confusing, or misleading. The court also noted that Cromer withdrew the witness.

"The opinions of experts on any question of science, skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses." OCGA § 24-9-67. The admission or exclusion of evidence is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *American Petroleum Products v. Mom & Pop Stores*, 231 Ga. App. 1, 7 (3) (497 SE2d 616) (1998).

Here, although the parties quibble about the nature of the trial court's decision and the reason for it, the court essentially concluded that the witness was not qualified to testify to the ultimate fact in issue — whether the Cull accident caused the specific injuries for which Cromer sought compensation, and that the testimony was cumulative of other testimony.

That Watts planned to testify to the ultimate issue is not per se objectionable. "Expert opinion testimony on issues to be decided by the jury, even the ultimate issue, is admissible where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the average layman. . . ." (Citation and punctuation omitted.) *Carlock v. Kmart Corp.*, 227 Ga. App. 356, 361 (3) (b) (489 SE2d 99) (1997). However, "[a] party may not bolster his case as to the ultimate issue with expert testimony when the jury could reach the same conclusion independently of the opinion of others." (Citations and punctuation omitted.) Id.

But here the jury had to decide whether the Cull accident caused Cromer's injuries given that there were other possible causes of her injury and given that medical doctors disagreed about the cause. Because jurors do not have the expertise to answer that question for themselves, we conclude that a properly qualified expert could testify to causation in this case. And that expert need not be a medical doctor. Georgia law does not mandate that only medical doctors may testify regarding medical issues; others with certain training and experience may testify on issues within the parameters of their expertise. *Goodman v. Lipman*, 197 Ga. App. 631, 633 (3) (399 SE2d 255) (1990); OCGA § 24-9-67.

The Supreme Court has given guidance regarding the type of expertise required for determining whether one of two accidents caused a certain injury. *Johnson v. Knebel*, 267 Ga. 853 (485 SE2d 451) (1997). As stated therein,

in order to possess the expertise required to render an expert opinion as to the proximate cause of physical injuries purported to result from one of two separate automobile collisions, a witness must have had at least some training or experience in deducing the effects of automobile collisions upon human passengers. This in turn requires some degree of expert knowledge in the realms of human physiology and anatomic structure, including biomechanics and osteology. . . . [I]t also requires some knowledge concerning the structure of the automobile's passenger compartment, and any passenger safety devices used therein, such as passenger restraints, airbags, and reinforced side, front and rear

panels. Furthermore, the expert witness must be able to relate the objective means used in applying this expert knowledge to determine that the specified injury to the passenger was caused by particular damage to the automobile.

Id. at 858 (3). However, even if one is qualified as an expert, the scope of what is admissible as expert opinion testimony is not unlimited. An expert may not give opinions "outside the domain of the science, art, or trade in which they are experts." (Citations and punctuation omitted.) Id. "With respect to [each] particular scientific procedure or technique, the trial court makes a determination whether the procedure or technique in question has reached a scientific stage of verifiable certainty, based upon evidence, expert testimony, treatises, or the rationale of cases in other jurisdictions." (Citations and punctuation omitted.) *Jordan v. Ga. Power Co.*, 219 Ga. App. 690, 693 (1) (466 SE2d 601) (1995).

Thus, the questions faced by the trial court were (1) whether the ability to determine if a certain accident caused a certain injury has reached a scientific stage of verifiable certainty and (2) whether Dr. Watts had expertise in that science.

We find that the trial court did not abuse its discretion because Cromer did not present sufficient evidence to show either point. We find limited evidence in the record that the field of biomechanics includes a technique of determining if specific injuries result from specific accidents, let alone that that technique has reached a scientific stage of verifiable certainty. Simply mentioning that there have been "cadaver tests" or that volunteers have been filmed in low-speed accidents does not answer the question. No information was provided that scientific studies have been performed to show how much force and movement it takes to herniate a disk or to tear a rotator cuff. No treatises or cases from other jurisdictions were introduced to support Cromer's position.

Further, Dr. Watts did not show that his expertise included being able to determine if a certain accident caused a certain injury. Even he testified that what he was prepared to say fell somewhat short. He testified that he could opine "which cervical disk is *most likely* to be injured" and "which is the *most vulnerable* part of the neck." And there is no support whatsoever for the proposition that he can deduce whether someone would sustain a torn rotator cuff injury in an accident. The trial court was prepared to allow Dr. Watts to testify "as to how the incident occurred, what manner it occurred, the velocity that he believed the vehicles were traveling . . . , [a]nd . . . how he believed the body would have reacted inside the cabin." Given the lack of support for an expert opinion exceeding this scope, we cannot say the court abused its discretion.

Finally, we are somewhat limited in assessing any error because Cromer chose to withdraw the witness. Given that the court would have allowed certain testimony and that it is unclear exactly what Watts was going to say, we cannot review the issue any more closely to determine if admissible testimony was prohibited.

*Judgment affirmed. Blackburn, C. J., and Mikell, J., concur.*

DECIDED MARCH 21, 2002.

*Mozley, Finlayson & Loggins, Robert M. Finlayson II, R. Ann Grier, Jennifer E. Theobold,* for appellant.

*Finley & Buckley, Timothy J. Buckley III*, for appellees.