## A02A0640. MUIR v. THE STATE.
### (568 SE2d 515)

BARNES, Judge.

Jamie Muir appeals her conviction for driving under the influence of alcohol to the extent she was a less safe driver, contending the trial court erred in restricting her expert's testimony concerning the administration and reliability of the horizontal gaze nystagmus (HGN) field evaluation test. Because the trial court did not abuse its discretion in finding that the witness was not qualified as an expert in this area, we affirm.

This case was tried for a second time after we reversed the first conviction in *Muir v. State*, 248 Ga. App. 49 (545 SE2d 176) (2001). On retrial, the state prosecuted Muir both as a less safe driver and as a per se violator for driving with a blood alcohol content of 0.10 grams or more, but the jury acquitted her of the per se violation. During the presentation of the State's case, the arresting officer testified in detail regarding the fact that ingesting alcohol causes an involuntary nystagmus, or jerking, in the eyes, and regarding his administration of the test to Muir. He further testified that Muir had "a lack of smooth pursuit. She had nystagmus at maximum deviation, and she also had nystagmus prior to 45 degrees," and proceeded to explain what those terms mean. The officer concluded that Muir's responses to the test were "significant indicators of impairment."

Muir then cross-examined the officer regarding the test administration and the conclusions that could be drawn from the results. The officer agreed that some people have a natural nystagmus, and factors other than alcohol, such as lack of sleep or excessive caffeine, can cause it. He also testified that he decided to arrest Muir after he completed the field evaluations, including the HGN.

The defense called Dr. James Woodford to testify. After direct examination by Muir, the defense tendered Dr. Woodford as an expert "[i]n the area of chemistry and the effects of alcohol on the human body; also, the Georgia breath testing machine as it's currently embodied in this state. And I'm going to ask questions concerning the interpretation of test results, comparative studies between blood and breath of men and women in that area." After a lengthy voir dire by the State, during which Dr. Woodford stated, "I'm a chemist, and I know about medicinal chemistry, which is the chemistry of bodily functions. But I'm not a physiologist," the trial court certified Dr. Woodford as an expert in chemistry. Muir then tendered

Dr. Woodford as an expert on the Intoxilyzer 5000 and gender bias in breath alcohol testing. After further direct examination and voir dire by the State, the trial court recognized the witness as an expert in the areas of chemistry and studies on the use and accuracy of the Intoxilyzer machine (but not the workings of the machine itself).

During his testimony, Muir's counsel asked Dr. Woodford a question about a study from Clemson University on "field sobriety evaluations," including the HGN, and the error rate for experienced officers giving these tests. This question fell outside of the areas of expertise that he had been qualified in, and therefore he was not authorized to comment on the report, which would have been hearsay. See generally *Johnson v. Knebel*, 267 Ga. 853, 855 (1), 857 (3) (485 SE2d 451) (1997) (expert witnesses may render opinions on any matter within their realm of expertise); *Cromer v. Mulkey Enterprises*, 254 Ga. App. 388, 393 (2) (562 SE2d 783) (2002) (experts may not give opinions outside domain of science, art, or trade in which they are experts); *Woods v. Andersen*, 145 Ga. App. 492, 494 (3) (243 SE2d 748) (1978) (opinion of expert regarding scientific works *pertaining to his profession* amounts to something more than mere hearsay).

At this point in the colloquy, the court indicated that it also felt that expert testimony was not required or allowed regarding the field sobriety tests, because they are only based on common sense. But, as Muir correctly pointed out, the HGN is not based on common sense, but on science. See *Hawkins v. State*, 223 Ga. App. 34, 38 (1) (476 SE2d 803) (1996).

Muir then offered that Woodford was qualified to testify about the HGN test. Woodford testified that he had been certified in field sobriety evaluations, but did not explain whether the certification included the HGN test. This certification, Muir's attorney explained, was the "same course that the officer was certified in." Muir also made an informal proffer that the witness would testify about the "predictability or the reliability of an HGN and being able to predict the presence of alcohol. . . . And moreover, I might be inclined to ask him is there any correlation between the HGN and the predictability of impairment." The attorney went on to say that there was "no predictability between the presence of the six clues on the HGN and a person's actual impairment . . . ," and that there were no studies to show the contrary.

Simply put, the record contains no indication that the witness had any expertise in the area of the accuracy, reliability, or "predictability" of HGN tests to show whether someone is impaired. Being certified to perform the test falls far short of being an expert in these areas. One requires learning a technique and memorizing how to read the results. The other requires education, training, or experience sufficient to develop a "peculiar knowledge concerning some

matter of science or skill to which his testimony relates." *Tifton Brick &c. Co. v. Meadow*, 92 Ga. App. 328, 330-331 (1) (88 SE2d 569) (1955). Second, the witness admitted that he was not an expert in human physiology — "the branch of biology dealing with the functions and vital processes of living organisms or their parts and organs." Webster's New World Dictionary (3rd ed. 1988). Thus, the record contained no evidence that the witness had expertise regarding the extent to which the presence of the six clues on the HGN test revealed a person's actual impairment. Third, there is only evidence that the witness was familiar with one report on the subject of HGN. Anyone can read one report on a topic; that does not make them an expert. Finally, there was no evidence that the witness had performed his own studies or that he had personal experience judging the reliability of HGN results.

The decision to qualify a witness as an expert rests in the trial court's discretion. *Gulley v. State*, 244 Ga. App. 629, 630 (1) (536 SE2d 530) (2000). Where the party offering the witness has failed to show that the witness has expertise in a particular subject, the court does not abuse its discretion by limiting testimony on that topic. See *Cromer v. Mulkey Enterprises*, supra.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED JUNE 17, 2002 —
RECONSIDERATION DENIED JULY 8, 2002 — 

*Spruell, Taylor & Associates, Billy L. Spruell, Melinda D. Taylor*, for appellant.

*Joseph J. Drolet, Solicitor-General, Katherine Diamandis, Erik B. Fortner, Assistant Solicitors-General*, for appellee.