A04A0688. HOME DEPOT U. S. A., INC. v. TVRDEICH et al.

(602 SE2d 297)

ELLINGTON, Judge.

A Spalding County jury awarded Catherine Tvrdeich $1.5 million on her personal injury claim against Home Depot U. S. A., Inc.[1] Home Depot appeals, contending the trial court abused its discretion in admitting certain expert testimony and in denying its motion for a directed verdict on Tvrdeich's claim for attorney fees. For the reasons which follow, we affirm.

The following relevant facts are undisputed. On May 16, 1999, Catherine Tvrdeich fell while shopping in the garden department of a Home Depot store. She began suffering chronic debilitating headaches. Nine months later, Tvrdeich underwent a surgical fusion of the C5 and C6 vertebrae. Her surgery included the insertion of a metal plate and screws and a graft of coralline hydroxyapatite, derived from marine coral, which had been soaked in activated platelet-derived growth factor previously extracted and concentrated from her own

---

[1] The jury also awarded Tvrdeich's husband $100,000 on his claim for loss of consortium. Home Depot raises no separate issue regarding the loss of consortium claim. Accordingly, we will refer to the Tvrdeichs as litigants collectively as "Tvrdeich."

blood. A few weeks later, Tvrdeich began exhibiting new symptoms, including tingling and swelling in her hands and feet. Ultimately, Tvrdeich's doctor diagnosed her with the systemic form of scleroderma,[2] an autoimmune connective tissue disorder, with secondary fibromyalgia. Because of her condition, Tvrdeich suffers chronic pain and disability and has a shortened life expectancy.

Before trial, Home Depot moved in limine to exclude opinion testimony that its negligence proximately caused Tvrdeich's systemic scleroderma. Home Depot argued that the theory that trauma can cause the onset of the disease was a novel scientific theory which had not reached a scientific stage of verifiable certainty, rendering the evidence inadmissible under *Harper v. State*, 249 Ga. 519, 523-526 (1) (292 SE2d 389) (1982). The trial court denied Home Depot's motion in limine without evaluating the scientific evidence under the standard set out in *Harper v. State*.

At trial, Tvrdeich presented the following evidence on the issue of the cause of her systemic scleroderma-related damages. First, Tvrdeich's treating rheumatologist opined,

> It is postulated that trauma causes the release of certain hormones which will then stress out a person's immune system. Subsequently, patients who are likely to develop an autoimmune problem or who are inherently susceptible to development of [an] autoimmune problem will go forth and develop one. Medically I think it more likely than not that the trauma sustained by Ms. Tvrdeich in May 1999 has been the precipitating factor in all her subsequent medical woes.

Another rheumatologist, a leading researcher in the area of scleroderma and related conditions, explained that in scleroderma cells called fibroblasts, which produce collagen and other proteins as part of the body's normal healing response, overproduce those proteins, damaging the skin, joints and internal organs. The scleroderma expert explained that, to develop scleroderma, a person must have a genetic predisposition for the disease and must experience a trigger that precipitates the onset of the disease. The expert testified that "[t]rauma is now recognized to be a potential trigger for scleroderma, presumably in somebody who has a genetic susceptibility," citing four published scientific articles. In those publications, as summarized by the witness, the authors described several patients who developed systemic scleroderma after episodes of physical trauma.

---

[2] The systemic form of scleroderma is also known as systemic sclerosis.

The scleroderma expert testified he was "very confident" that, "based upon a reasonable medical probability," Tvrdeich was genetically susceptible to the disease and that some combination of the trauma from her neck surgery, the introduction of foreign objects (the coral graft, metal plate and screws), and the use of Tvrdeich's concentrated platelet-derived growth factor precipitated the onset of the disease. Although he conceded that the timing of Tvrdeich's development of scleroderma "may be a mere coincidence," he believed that the odds that Tvrdeich would have developed systemic scleroderma without the neck surgery were "extremely slim." The expert based his conclusions on his experience and training and his examination of Tvrdeich and her medical records.

1. In related enumerations, Home Depot challenges the admission of expert testimony that its negligence proximately caused Tvrdeich's systemic scleroderma.[3] "The admissibility of expert testimony is a matter within the trial court's sound discretion. We will not reverse the trial court's ruling on such evidence absent an abuse of that discretion." (Footnotes omitted.) *Applebrook Country Dayschool v. Thurman*, 264 Ga. App. 591, 592 (1) (591 SE2d 406) (2003).

Home Depot contends, as it did at trial, that evidence that the trauma Tvrdeich experienced triggered the onset of systemic scleroderma was inadmissible under *Harper v. State*,[4] because the theory that trauma can cause the onset of the disease was a novel scientific theory which had not reached a scientific stage of verifiable certainty. Tvrdeich, on the other hand, contends *Harper v. State* did not apply to the evidence at issue because her experts did not base their conclusions on the results of any scientific test, technique or procedure, but only on the evidence and their own understanding of their field of expertise.

In general, Georgia evidence law favors the admission of relevant expert opinion testimony, leaving the jury to determine the weight to give such evidence.[5] In this vein, the Evidence Code expansively provides: "[t]he opinions of experts on any question of science, skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses." OCGA § 24-9-67. Before admitting expert testimony, trial courts

---

[3] Procedurally, Home Depot contends the trial court abused its discretion in denying its motion in limine to exclude the evidence and erred in denying its motions for directed verdict, judgment notwithstanding the verdict, and new trial, which were based on the inadequate evidence on the issue of causation as to Tvrdeich's damages related to her systemic scleroderma.

[4] 249 Ga. at 523-526 (1).

[5] See generally Scheer, Green's Georgia Law of Evidence, § 111 (5th ed.); Goger, Daniel's Georgia Handbook on Criminal Evidence, § 7-8 (2003 ed.).

determine whether the testimony is needed to assist the jury[6] and whether the witness is qualified as an expert in the relevant field or discipline.[7] In the seminal case of *Harper v. State*, the Supreme Court of Georgia recognized an additional threshold determination where proposed expert opinion testimony includes discussion of a scientific procedure or technique. 249 Ga. at 523-524 (1).[8] The Court held:

> We hold that it is proper for the trial judge to decide whether the procedure or technique in question has reached a scientific stage of verifiable certainty, or in the words of Professor Irving Younger, whether the procedure "rests upon the laws of nature." The trial court may make this determination from evidence presented to it at trial by the parties; in this regard expert testimony may be of value. Or the trial court may base its determination on exhibits, treatises or the rationale of cases in other jurisdictions. The significant point is that the trial court makes this determination based on the evidence available to him rather than by simply calculating the consensus in the scientific community. Once a procedure has been recognized in a substantial number of courts, a trial judge may judicially notice, without receiving evidence, that the procedure has been established with verifiable certainty, or that it rests upon the laws of nature.

---

[6] See *Weems v. State*, 268 Ga. 142, 144 (3) (485 SE2d 767) (1997) (expert evidence properly excluded where issue presented to expert was not beyond the ken of the average juror); *Applebrook Country Dayschool v. Thurman*, 264 Ga. App. at 592-593 (1) ("Expert opinion testimony on issues to be decided by the jury, even the ultimate issue, is admissible where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the average layman. . . . [W]here[, on the other hand,] (a) the path from evidence to conclusion is not shrouded in the mystery of professional skill or knowledge, and (b) the conclusion determines the ultimate issues of fact in a case, the jury must make the journey from evidence to conclusion without the aid of expert testimony.") (punctuation and footnote omitted). See generally Milich, Georgia Rules of Evidence, § 15.3 (2nd ed.) (discussing factors considered in determining whether expert evidence is helpful to the trier of fact).

[7] *Dimambro Northend Assoc. v. Williams*, 169 Ga. App. 219, 220 (1) (312 SE2d 386) (1983). See generally Milich, Georgia Rules of Evidence, § 15.4 (2nd ed.) (qualification of experts).

[8] We note that not all *expert* testimony constitutes *scientific* evidence; expert testimony which deals simply with observations based on skill and expertise is not subject to the *Harper v. State* analysis. See, e.g., *Cromartie v. State*, 270 Ga. 780, 787 (18) (514 SE2d 205) (1999) (visual comparison of shoe imprints is not scientific evidence subject to *Harper v. State* analysis); *Belton v. State*, 270 Ga. 671 (512 SE2d 614) (1999) (accord); *Heller v. State*, 234 Ga. App. 630, 631-632 (2) (b) (507 SE2d 518) (1998) (result of field sobriety test does not constitute scientific evidence subject to *Harper v. State*); *State v. Pastorini*, 222 Ga. App. 316, 318-319 (2) (474 SE2d 122) (1996) (accord).

(Citations and footnotes omitted.) 249 Ga. at 525-526 (1) (testimony regarding a criminal defendant's statements while under the influence of sodium amytal, so-called truth serum).[9]

As we have held, the *Harper v. State* analysis applies only where the expert bases his or her conclusions on the results of a scientific "procedure or technique." *J. B. Hunt Transport v. Brown*, 236 Ga. App. 634, 635 (1) (a) (512 SE2d 34) (1999); *Orkin Exterminating Co. v. McIntosh*, 215 Ga. App. 587, 593 (452 SE2d 159) (1994). In *Orkin Exterminating Co. v. McIntosh*, we held that *Harper v. State* did not apply to the plaintiff's expert's testimony that exposure to pesticides caused the plaintiff's symptoms because the defendant pest control company "[did] not challenge a particular scientific test or technique employed by plaintiffs' experts; [rather, the defendant] challenge[d] the conclusions drawn by those experts from testimony and evidence in the record. This determination [was] for the jury." 215 Ga. App. at 593 (4). Similarly, in *J. B. Hunt Transport v. Brown*, we followed *Orkin Exterminating Co. v. McIntosh* and held that, because an accident reconstructionist performed no test or technique, *Harper v. State* did not apply to the expert's testimony that the defendant's negligence caused a wreck. 236 Ga. App. at 635 (1) (a). Because Tvrdeich's experts drew their conclusions from testimony and evidence in the record, rather than from any scientific test or technique, we hold the trial court did not err in declining to apply the *Harper v. State* standard to their testimony. Id.; *Orkin Exterminating Co. v. McIntosh*, 215 Ga. App. at 587. It follows from this that, because the evidence was relevant and otherwise admissible, the trial court did not abuse its discretion in admitting it.[10]

---

[9] As we have repeatedly noted, Georgia has not adopted Federal Rule of Evidence 702 or the standards set out in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U. S. 579 (113 SC 2786, 125 LE2d 469) (1993). See, e.g., *Bryant v. Hoffmann-La Roche, Inc.*, 262 Ga. App. 401, 408, n. 4 (585 SE2d 723) (2003); *Orkin Exterminating Co. v. Carder*, 258 Ga. App. 796, 800 (1) (575 SE2d 664) (2002). We decline to do so here.

[10] We believe that the cases cited by Judge Andrews, in his dissent, can be distinguished and do not demand that we overrule, rather than follow, *Orkin Exterminating Co. v. McIntosh* and *J. B. Hunt Transport v. Brown*. In *Pullin v. State*, 272 Ga. 747 (534 SE2d 69) (2000), and *Cromer v. Mulkey Enterprises*, 254 Ga. App. 388 (2) (562 SE2d 783) (2002), the proposed expert testimony included the application of a particularized analytical technique to a set of case-specific data. *Pullin v. State*, 272 Ga. at 749 (analysis of telephone billing records to determine the originating location of a cellular telephone call); *Cromer v. Mulkey Enterprises*, 254 Ga. App. at 389-393 (2) (biomechanical analysis of whether a collision at a certain speed and angle of impact could cause certain injuries). In *Carr v. State*, 267 Ga. 701 (1) (482 SE2d 314) (1997), although the Supreme Court spoke in broad language about "scientific test evidence . . . based on an analysis of data," the proposed evidence did include a scientific test or technique performed by the expert, specifically, the analysis of the remains of a building destroyed by fire for the presence of certain chemicals using a dog trained to alert to the presence of accelerants. 267 Ga. at 702-703 (1), overruled on other grounds, *Clark v. State*, 271 Ga. 6, 10 (515 SE2d 155) (1999). In this case, on the other hand, the experts testified that Home Depot's negligence caused Tvrdeich's systemic scleroderma based on their understanding of the disease and on the

2. Home Depot contends the trial court erred in denying its motion for directed verdict and judgment notwithstanding the verdict as to Tvrdeich's attorney fees claim pursuant to OCGA § 13-6-11. Specifically, Home Depot argues that Tvrdeich failed to produce legally sufficient evidence of the nature, necessity, and value of the legal services performed by counsel.

"The standard of review of a trial court's denial of a motion for a directed verdict is the 'any evidence' standard, and the evidence is construed most favorably toward the party opposing the motion." (Citation, punctuation and footnote omitted.) *Patton v. Turnage*, 260 Ga. App. 744, 746 (2) (580 SE2d 604) (2003). Accordingly, this standard of review requires Home Depot "to show that there was no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demanded the verdict sought" on Tvrdeich's claim for attorney fees. (Citation, punctuation and footnote omitted.) Id. See also *Morrison Homes of Florida v. Wade*, 266 Ga. App. 598, 600 (2) (598 SE2d 358) (2004) ("An award of bad faith attorney fees should be affirmed if there is any evidence to support it.") (citation omitted).

In Georgia, "[a]n attorney cannot recover for professional services without proof of the value of those services." (Citations and punctuation omitted.) *Brandenburg v. All-Fleet Refinishing*, 252 Ga. App. 40, 43 (5) (555 SE2d 508) (2001). "A court may consider a contingent fee agreement and the amount it would have generated as evidence of usual and customary fees in determining both the reasonableness and the amount of an award of attorney fees." (Citations and punctuation omitted.) Id. When a party seeks fees based on a contingent fee agreement, the party must show that the contingency fee percentage was "a usual or customary fee for such case" and that "the contingency fee was a valid indicator of the value of the professional services rendered." *Patton v. Turnage*, 260 Ga. App. at 748-749 (2). In addition, the party seeking fees must also introduce "evidence of hours, rates, or [some] other indication of the value of the professional services actually rendered." (Citation and punctuation omitted.) *Brandenburg v. All-Fleet Refinishing*, 252 Ga. App. at 43 (5).

On the issue of fees, Tvrdeich introduced the written contingency fee contract pursuant to which she agreed to pay one-third of any recovery as attorney fees. Her attorney testified that the customary fee in such a case is usually 40 percent. Although the attorney did not keep a record of the time devoted to the case because it was a

---

course of Tvrdeich's illness (i.e., that the onset of her disease occurred after she experienced a major trauma), not on the basis of any scientific test or particularized analytical technique. In addition, we note that in none of these later cases did our appellate courts find it necessary to overrule *Orkin Exterminating Co. v. McIntosh* and *J. B. Hunt Transport v. Brown*.

contingency case, he testified that Tvrdeich's case "probably got into five boxes and a full table of things. And it took a great deal of work, out-of-pocket expense incurred." Because, construing the evidence in favor of Tvrdeich, there was evidence that the contingency fee she agreed to pay was a valid indicator of the value of her attorney's services, the trial court did not err in denying Home Depot's motions for a directed verdict and for judgment notwithstanding the verdict on Tvrdeich's fee claim. *Walther v. Multicraft Constr. Co.*, 205 Ga. App. 815, 816-818 (3), (4) (423 SE2d 725) (1992); *U-Haul Co. &c. v. Ford*, 171 Ga. App. 744, 746 (5) (320 SE2d 868) (1984).

*Judgment affirmed. Smith, C. J., Johnson, P. J., Ruffin, P. J., Barnes, Miller and Phipps, JJ., concur. Adams, J., concurring specially. Andrews, P. J., and Mikell, J., dissent. Blackburn, P. J., and Eldridge, J., not participating.*

ADAMS, Judge, concurring specially.

I agree with the majority result but write separately to make this observation. The essential difference between the majority opinion and dissenting opinion is whether the test announced in *Harper v. State*, 249 Ga. 519 (292 SE2d 389) (1982), should apply only to scientific "procedures" and "techniques," or more broadly to all scientific "principles." Arguably, the source of this confusion can be found in *Harper* itself and in *Carr v. State*, 267 Ga. 701 (482 SE2d 314) (1997).

The Supreme Court's reasoning in *Harper* begins with a discussion of how trial courts determine "whether a given scientific *principle or technique*" is competent evidence. (Emphasis supplied.) Id. at 524. By the second half of the sentence, the word "principle" has been dropped and only "technique" is discussed. Id. at 525. In the next sentence "principle" reappears without "technique." Id. After more discussion, the Supreme Court continues, "we conclude that the *Frye* rule of 'counting heads' in the scientific community is not an appropriate way to determine the admissibility of a scientific *procedure* in evidence." (Emphasis supplied.) Id. It then announces a holding that uses the words "procedure or technique." Additional terms are introduced in *Carr*. There, the Supreme Court indicated that the *Harper* test should apply to "scientific test evidence" but that the appellate courts had not directly decided what type of evidence would constitute such evidence. *Carr*, 267 Ga. at 702-703. After describing nine criminal cases that applied *Harper*, the Court continued, "[w]hat these cases have in common is *expert opinion based on an analysis of data*, an opinion that could only be based on something more than mere observation." (Emphasis supplied.) Id. at 703.

In this case, the treating rheumatologist offered a "postulate," or, according to Webster's Dictionary, a claim without proof, that trauma

can lead to an autoimmune problem in those who are inherently susceptible. The second rheumatologist's expert opinion was based on four published articles, from which she concluded that trauma is recognized to be a potential trigger for scleroderma for someone who is susceptible. Those articles report the *observations* of *other* doctors treating scleroderma patients.

It is difficult, to say the least, to determine whether these expert opinions fall within the various terms used in *Harper, Carr,* and subsequent cases to describe that to which the *Harper* test applies. This case may present a good opportunity for the Supreme Court to provide some guidance.

ANDREWS, Presiding Judge, dissenting.

1. Over Home Depot's objection that the testimony was scientifically unreliable, the trial court allowed Tvrdeich to present expert opinion testimony that trauma she suffered in a fall at Home Depot and during subsequent surgery necessitated by the fall caused her to develop scleroderma. The majority holds that this testimony was not the type of scientific evidence subject to the reliability requirements set forth in *Harper v. State,* 249 Ga. 519 (292 SE2d 389) (1982). I disagree and find that the trial court erred by failing to hold a hearing pursuant to *Harper* to exercise its discretion to determine whether or not the scientific principle or theory upon which the expert opinion testimony was based has reached a "scientific stage of verifiable certainty" required prior to admission under *Harper.* Id. at 524-527.

As the majority points out, Home Depot moved in limine to exclude this expert opinion testimony on the basis that the claimed causal connection between trauma and the onset of scleroderma is a novel scientific theory which is unreliable and inadmissible under *Harper.* The trial court denied the motion and admitted the expert testimony without evaluating its scientific reliability under the *Harper* test. In so doing, the trial court referred to our opinion in *Orkin Exterminating Co. v. McIntosh,* 215 Ga. App. 587, 593 (452 SE2d 159) (1994), which held that *Harper* did not apply to Orkin's claim that expert opinion testimony establishing a causal connection between exposure to a certain pesticide and the plaintiff's illness was scientifically unreliable. *Orkin Exterminating* held that *Harper* did not apply because Orkin "[did] not challenge a particular scientific test or technique employed by plaintiff's experts; [rather] Orkin challenge[d] the conclusions drawn by those experts from testimony and evidence in the record." *Orkin Exterminating,* 215 Ga. App. at 593.

It is not clear whether *Orkin Exterminating* represents a narrow

construction of *Harper*[11] or simply a technical ruling in that case on the sufficiency of an evidentiary objection. What is clear is that *Harper* has been construed by the Supreme Court of Georgia to apply to a wide range of cases involving the admissibility of expert opinion testimony based on an analysis of data supporting various scientific principles or theories. *Carr v. State*, 267 Ga. 701, 702-704 (482 SE2d 314) (1997) (citing to the "wide range" of cases involving "scientific test evidence" subject to *Harper*, all having in common "expert opinion based on an analysis of data"), overruled on other grounds, *Clark v. State*, 271 Ga. 6, 10 (515 SE2d 155) (1999); *Pullin v. State*, 272 Ga. 747, 748-749 (534 SE2d 69) (2000) (applying the *Harper* test to the admissibility of expert opinion testimony based on scientific principles showing that the geographic location of a cellular call can be reliably established). Moreover, this Court has not persisted in giving *Harper* the narrow construction apparently applied in *Orkin Exterminating*. See *Cromer v. Mulkey Enterprises*, 254 Ga. App. 388, 393 (562 SE2d 783) (2002) (applying the *Harper* test to the admissibility of expert testimony which relied on scientific principles to determine if a certain accident caused a certain injury).

The *Harper* test clearly applies not only in cases where the application of a particular scientific test or technique is at issue, but also where expert opinion testimony is offered which is based upon an analysis of data supporting a scientific principle or theory. It follows that the reliability test set forth in *Harper* applied to the admissibility of the expert opinion testimony in the present case, which relied upon an analysis of data to advance the scientific principle or theory that the trauma suffered by Tvrdeich caused her to develop scleroderma. To the extent *Orkin Exterminating*, 215 Ga. App. at 593 and *J. B. Hunt Transport*, 236 Ga. App. at 635 can be construed to hold that *Harper* has no application to the present case, they should be overruled.

Because the trial court erroneously failed to exercise its discretion to determine under *Harper* whether or not this expert opinion testimony was reliable and admissible, the judgment in this case should be affirmed on condition and the case remanded to the trial court with directions to apply the reliability test set forth in *Harper*. If the trial court finds under *Harper* that the testimony was reliable and admissible, then the judgment should stand affirmed, subject to Home Depot's right to appeal that finding. If, however, the trial court finds under *Harper* that the testimony was unreliable and should have been excluded, then Home Depot should be granted a new trial.

---

[11] *J. B. Hunt Transport v. Brown*, 236 Ga. App. 634, 635 (512 SE2d 34) (1999), which relies on *Orkin Exterminating*, apparently takes this view.

2. Home Depot's claim that there was a lack of evidence to support the award of attorney fees may be rendered moot if a new trial is required. Accordingly, I would reserve ruling on this issue and give Home Depot the right to raise it again in its appeal, if necessary, from the trial court's findings on remand.

DECIDED JULY 16, 2004 —

*Hawkins & Parnell, Michael J. Goldman, Bondurant, Mixson & Elmore, Frank M. Lowrey IV, Nicole G. Iannarone, Gray, Hedrick & Edenfield, Lloyd B. Hedrick, Jr.,* for appellant.

*Evans & Evans, Larry K. Evans, Cramer & Peavy, James E. Peavy,* for appellees.